**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

ALI BEHROZ AZIZ
Mühling St 12
69121 Heidelberg, Germany

SHINKAY AZIZ
Mühling St 12
69121 Heidelberg, Germany

     *Plaintiffs*

v.                                                           Civil Action No. _____

BEZHAN AZIZ
8543 11ᵗʰ Avenue
Silver Spring, Maryland 20903

     *Defendant*

**COMPLAINT**

Plaintiffs, Ali Behroz Aziz and Shinkay Aziz, by their undersigned attorneys, sue the Defendant, Bezhan Aziz ("Defendant"), and for cause states as follows:

**Parties**

1.      Plaintiff Ali Behroz Aziz ("Ali") is an individual who resides in Heidelberg, Germany, and is an adult citizen of the country of Afghanistan and Germany.  Ali also goes by the name "Ali Behroz."

2.      Plaintiff Shinkay Aziz ("Shinkay") is an individual who resides in Heidelberg, Germany, and is an adult citizen of the country of Afghanistan.  Shinkay is Ali's mother and also the mother of Defendant Bezhan Aziz, as well as of Arash Aziz, who is not a party to this action.

3.     Defendant Bezhan Aziz ("Bezhan") an individual who resides at 8543 11th Avenue, Silver Spring, Montgomery County, Maryland, 20903, and is an adult citizen of Afghanistan.  He is Shinkay's son and Ali's younger brother.

## JURISDICTION AND VENUE

4.     Jurisdiction is based on diversity of citizenship and amount in controversy, under 28 U.S.C. § 1332(a)(2).  Plaintiffs are foreign nationals and Defendant is a foreign national residing in the State of Maryland.  The amount in controversy is over $75,000.

5.   The District of Maryland is the proper venue for this Complaint, because Bezhan is a lawful permanent resident of Silver Spring, Maryland.

## Factual Allegations

6.   From 2012, and while residing in Afghanistan, Plaintiffs maintained a joint bank account with the Pashtany Bank, Kabul, in which their funds were held in United States dollars.

7.     In 2013, Ali and his mom moved to Heidelberg, Germany because they were ~~he was~~ being persecuted by the Afghan Taliban and their lives were in danger. This threat arose due to Ali's performing construction work for the United States Army in Afghanistan in support of the army's operations and Shinkay's working for an international organization.

8.     Upon information and belief, in June 2021 Defendant, who is Ali's brother and Shinkay's son, was residing in Silver Spring, Maryland and attending Montgomery College as a student while also working for ADT, Inc., installing security cameras.

9.     In the Spring of 2021, Plaintiffs felt it necessary to move their funds out of his bank account in the Pashtany Bank because he feared Kabul would soon fall to the Taliban.  At the time, Plaintiffs understood that restrictions prevented the transfer of funds from Afghanistan to European countries, such as Germany, and also understood that funds could not be freely

transferred from Afghanistan into the United States. In an effort to save his and his mother's savings, Ali planned to travel back to Afghanistan and attempt to transfer their needed funds out of that war-torn country before the Taliban took over in Kabul.

10.    In a discussion with his brother about the issues Ali was having in moving his and his mother's funds from Afghanistan to Germany, Bezhan, the Defendant, offered to help. Bezhan promised to hold Plaintiffs' money for them in the United States and to assist Ali in transferring the money to the United States. Once the money was in a United States bank account, Bezhan assured Ali that it would be transferred to Germany.

11.    Both Ali and Bezhan were aware that in order for funds greater than a certain amount to be transferred out of Afghanistan, a legitimate reason for the transfer had to be provided to the Afghan bank from which the funds were being transferred.

12.    The initial plan suggested by Bezhan was for the funds to leave Afghanistan for claimed business purposes. Bezhan prepared a false ADT invoice in the amount of $180,000, in the name of Ali's company, Pinnacle Construction Company ("Pinnacle"). Bezhan transmitted this invoice via iMessage to Ali on or about June 13, 2021.

13.    In connection with this plan, Bezhan opened a bank account at Citibank N.A. ("Citibank").

14.    Ali arrived in Kabul, Afghanistan on June 18, 2022. On or about June 19, 2022, he went to Pashtany Bank and inquired at Pashtany Bank (which did not offer international wire transfers) and Azizi Bank (Afghanistan's largest commercial bank) about whether funds could be transferred from Pinnacle outside of the country to pay a business invoice. His plan was to transfer the funds in Plaintiffs' personal account into their Pinnacle account at Azizi Bank, and then do the

wire to the United States.  Ali learned from Azizi Bank, however, that the funds could not be wired by Pinnacle because Pinnacle's business license had expired.

15.     Ali then contacted Bezhan, who suggested the pretext of claiming that the funds were needed to help Bezhan to purchase a home.  Bezhan created false documents to be presented to support the claim.  On June 23, Bezhan emailed these documents to Ali in Word and PDF format, referenced the documents in WhatsApp messages and informed Ali that the Citibank account had been opened.  A true copy of Bezhan's email of June 23, 2021, and its PDF attachment are attached as Exhibit A (the "Property Invoice").  This document was false as the property was not, in fact, for sale.  Being desperate to get his mother's and his life savings out of the embattled country and having no other option for the funds to leave the country, Ali agreed.

16.     Azizi Bank allowed the wire to Citibank based on Ali's statement about the transfer's purpose.

17.     After the transfer of Plaintiffs' life savings to Bezhan's Citibank account, Ali provided Bezhan with wiring information to his bank account in Germany and requested that the funds be transferred as agreed. Via iMessage, Ali asked Bezhan to find out the transfer costs to Germany from the United States to Germany.  Ultimately, Bezhan responded that the transfer would only cost $25, and he also assured Ali that the money was safe in his account by sending screenshots of the Citibank account, showing the existing of funds and telling Ali that he had enhanced the security of the account by activating two-step authentication.  However, Bezhan has failed and refused to return Plaintiffs' funds without just cause or excuse.  Bezhan has no valid claim in law or fact to the Plaintiffs' funds.

18.     The transfer of Plaintiffs' funds to Bezhan's personal bank account, over which

he has sole control and authority, has conferred a benefit to Bezhan in the amount of $189,000.00 USD.

19.      Bezhan is aware of, and has acknowledged his receipt of Plaintiffs' funds in his account, and has made use of those funds to his personal benefit. But he has used fraudulently created documents and falsehoods to claim that the funds were transferred for him to purchase a home, which statements he knows are fraudulent.

20.      Although Ali had informed Azizi Bank that the funds were to be used to allow his brother to purchase a home so that the funds could leave Afghanistan, he only made this statement under severe duress. The false statement was necessary as it was the only way Plaintiffs' funds could leave Afghanistan.  At the time, the Taliban offensive, which began in early 2021, was quickly approaching Kabul and there was panic in the city. There had already been numerous targeted killings constantly of persons (such as Ali) who had assisted the United States military. Ali was despised by the Taliban and looked upon as a traitor because of his affiliation with the United States Army in Afghanistan, and he reasonably feared for his life if he were to fall into the hands of the Taliban.

21.      Upon information and belief and based on information from the Montgomery County Police Financial Crimes Unit, Bezhan has transferred the funds from the Citibank account to one or more accounts in his own name without informing the Plaintiffs.

22.      Bezhan's retention of Plaintiffs' funds in his account(s), to which he has no valid claim, is inequitable, and the circumstances mandate his return of the funds to Plaintiffs.

23.      Bezhan  has admitted to several persons that the funds that were transferred belong to Plaintiffs but still has refused to release them to Plaintiffs.  Bezhan has also informed Ali that he would release the funds in return for a payment from Ali; and, has threatened to not pay

Plaintiffs if Ali does not agree to his terms, using the transferred funds to pay Bezhan's legal expenses with the knowledge that Bezhan is holding his mother's and brother's life savings.

24.    As a result of Bezhan's wrongful conduct, Plaintiffs have been required to incur significant attorney's fees for which he requests reimbursement or contribution from Bezhan given Bezhan's fraudulent and unjust conduct.

## COUNT – I
### (Unjust Enrichment)

25.    Plaintiffs adopt and incorporates by reference the averments contained in Paragraphs 1 through 24 as set forth above.

26.    Plaintiffs conferred a monetary benefit upon Bezhan by the transfer of $189,000.00 USD into his personal Citibank, N.A. account held in Maryland.

27.    Bezhan has acknowledged the receipt of the sum of $189,000.00 USD transferred into his personal Citibank, N.A. account and has used those funds to his own benefit.

28.    The retention of Plaintiffs' funds by Bezhan, without any legal or factual claim or right, makes it inequitable for Bezhan to refuse to return those funds to Plaintiff.

## COUNT – II
### (Fraud)

29.    Plaintiff adopts and incorporates by reference the averments contained in Paragraphs 1 through 28 as set forth above.

30.    In June 2021, Ali and Behroz had multiple communications about the way in which Plaintiffs' funds would be able to leave Afghanistan and be sent to the United States since they could not be transmitted to Germany.

6

31.     Bezhan assured Ali that if Ali transferred the Plaintiffs' $189,000.00 USD to Bezhan's Citibank account, Bezhan would return the funds to Ali after they were out of Afghanistan and deposited in the United States.  This statement was false.

32.     In justified reliance on his brother's promise, and trusting in his brother, Plaintiffs authorized the transfer of funds to Bezhan.

33.     Notwithstanding his promise to his brother, and that would benefit his brother and mother, Bezhan has refused to transfer the funds.  As a result, Plaintiffs have been damaged.

34.     Bezhan acted with absolute malice in that the promise made to his brother was made with the evil intent to take his funds as well as for fraudulent purposes.

WHEREFORE, Plaintiffs demands:

a. compensatory damages of $189,000 and punitive damages in an amount to be determined by this Court.

b. that the Court impose a Constructive Trust over the Defendant's funds in the Citibank account in the amount of $189,000.

c. that the Defendant be made to account for the funds he has received from the Plaintiff.

d. attorney's fees and other costs incurred by the Plaintiffs in prosecuting this action for the return of his funds and for damages;

e. such other and further relief as this Court may deem appropriate.

Respectfully submitted,

/s/William S. Heyman
Federal Bar No. 23036
William S. Heyman
Heyman Law Firm
Suite 1100, 201 N. Charles Street
Baltimore, Maryland 21201

7

wheyman@heymanfirm.com
(t) (410) 762-0141
(f) (410) 762-0142
*Attorneys for Plaintiffs*